IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JERRYL A. CHANDLER, | ) | |
| | ) | 8:05CV227 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER of the SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Jerryl A. Chandler ("Chandler") filed an application for disability and disability insurance benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.*, on June 5, 2003. The Social Security Administration ("SSA") denied Chandler's application on July 9, 2003. T33. On August 14, 2003, Chandler filed a request for reconsideration with the SSA, and on September 17, 2003, the SSA upheld its application denial. T40; T42. On October 1, 2003, Chandler filed a request for hearing by an administrative law judge ("ALJ"). T46. The hearing commenced on September 14, 2004, and ALJ Norman R. Buls found Chandler not disabled under the Act. T17. The Appeals Council denied Chandler's request for review on March 15, 2005. T7. Chandler appeals the ALJ's finding, arguing that the ALJ failed to consider Chandler's evidence regarding his pain, did not accord enough weight to the Department of Veterans Affairs' decision granting Chandler disability compensation at the 100% rate because of his inability to work due to his service-connected disabilities, and failed to consider Chandler's chronic obstructive pulmonary disease and paranoid personality disorder. Filing No. 23. I have reviewed the record, the ALJ's evaluation and findings, the medical evidence, the parties' briefs, the transcript, and

the applicable law. I conclude the ALJ's finding that Chandler is not disabled within the meaning of the Act is supported by substantial evidence on the record as a whole.

**Background**

Chandler, born on October 12, 1941, is currently 62 years of age. Chandler has completed high school and two years of college. T307. His previous work experience includes jobs as a customer service representative, construction worker, and temporary services worker. Chandler has performed no substantial gainful activity since April 1, 2001, the date Chandler allegedly became disabled. T21. Chandler maintains disability due to degenerative disc disease of the lumbar spine, radiculopathy to the lower extremity, and degenerative joint disease. T68.

On July 8, 2002, Chandler visited the Veterans Administration Hospital emergency room complaining of back pain. T149. The physician noted that Chandler appeared to be distressed and in pain, but did not exhibit lack of muscle strength. T150. Chandler received a prednisone taper, pain medications, and a muscle relaxer. T150. Chandler complained of radiating pain down his legs past his knees, but exhibited strength in both quadriceps and thighs. *Id.* Chandler complained of numbness on his right side, but perceived tactile pressure during examination. *Id.*

On August 14, 2002, Chandler reported that medication helped "quite a bit" and the numbness had resolved. T147. Chandler exhibited intact sensation and a "reasonable range of motion, forward flexion to 85 degrees, extension 15 degrees, lateral bending 20, and rotation 25." T147. Chandler performed five repetitions of flexion to 85 degrees with only minor discomfort on the fourth and fifth repetition, along with five repetitions 15

degrees, lateral bending left and right 20 degrees, and rotation to 25 degrees with no problems. *Id.*

That same day, Jeffrey L. Beste, PAC, examined Chandler for an increase exam where Chandler requested increase for his service-connected left shoulder and back condition. T145. Beste observed that Chandler answered questions vaguely and seemed noncommittal. T146. Beste noted Chandler did not appear to be in acute distress, although Beste did not doubt Chandler had a painful shoulder condition. *Id.* Chandler reported he took over-the-counter medications like Tylenol or Advil that helped "quite a little bit," along with Naproxen, Prednisone, and Flexeril. *Id.* Beste noted Chandler's psychiatric diagnosis of paranoid personality disorder. *Id.* Beste abducted his shoulder to 165 degrees, forward flex 175, and internal and external rotation to 90 degrees. *Id.* Beste did not observe any atrophy of the shoulder muscle group compared to the right shoulder, and Chandler performed five repetitions in all directions without discomfort. *Id.*

On September 3, 2002, Chandler presented claiming six weeks of increasing left shoulder pain radiating to his upper extremity. T143. Chandler stated he had constant numbness in his fourth and fifth fingers and no history of hypertension. *Id.* Joe D. Scott, P.A., noted Chandler had blood pressure of 150/104 and assessed Chandler with chronic left shoulder pain with exacerbation and hypertension. *Id.* Scott prescribed Atenolol and Naprosyn and recommended a physical therapy consult and an appointment a week later to check Chandler's blood pressure. *Id.* At Chandler's physical therapy consultation, on September 11, 2002, Chandler reported that he cared for himself independently and with ambulation using no assistive device. T139. Chandler did not identify his goals and answer many questions. *Id.* Kathy Brunig, Manager, PM&RS, found no areas of increased muscle tone noted in Chandler's cervical, interscapular or left shoulder areas. T140.

3

Brunig assessed Chandler's range of motion in his left shoulder at 70 percent of normal in all planes of motion, and Chandler did not exhibit pain. *Id.* Brunig reported Chandler's muscle strength at 4 to 4+ out of five in both upper extremities, and "no reproduction of symptoms of increased report of pain with resistance of any left shoulder motion." *Id.* Chandler's cervical compression/distraction test, thoracic outlet test, and drop arm test and rotator cuff tear test were negative. *Id.*

Brunig did not find specific areas of weakness, instability, or increased muscle tone. *Id.* Brunig could not reproduce or change Chandler's symptoms with any testing or procedures. *Id.* Brunig noted this made it difficult to reach an effective treatment, but she instructed Chandler on a home exercise program for generalized shoulder strengthening. *Id.*

On January 17, 2003, Chandler presented for an increase examination. T137. Chandler requested an examination of his right shoulder. *Id.* Issac Witkowski noted that Chandler's file evidenced concerns with Chandler's left shoulder. *Id.* Chandler maintained he avoided activity with his right shoulder and when flare-up's occurred with activity, Chandler decreased use of his shoulder and avoided heavy lifting. *Id.* Chandler forward flexed and abducted his right shoulder from 0 to 180 degrees and 0 to 175 degrees, respectively, with external rotation from 0 to 85 degrees and internal rotation performed from 0 to 80 degrees. T138. Chandler performed three additional forward flexion and abduction exercises from 0 to 170 degrees with mild pain, but no weakness, fatigability, or incoordination. *Id.* Chandler cited a history of a right shoulder dislocation many years ago. *Id.* Witkowski noted Chandler had equal grasps, and diagnosed Chandler with episodes of tendinitis and bursitis in the right shoulder. *Id.*

X-rays revealed mild to moderate degenerative joint disease and degenerative disk disease, predominantly at L4-5, as indicated by anterior and marginal osteophyte formation. T137. A magnetic resonance imaging ("MRI") scan revealed mild disc dehydration at L1-2. *Id.* "From L2-L5, 3 discs showed mild-moderate annular bulges with mild central canal stenosis, and L5-S1 disc dehydration and mild annual bulge and mild central canal stenosis." *Id.* With mild pain and difficulty, Chandler forward flexed his trunk from 0 to 80 degrees, posteriorly extended it from 0 to 20 degrees, and laterally flexed his trunk from 0 to 20 in both directions. T135. Chandler performed three additional forward flexion exercises and flexed his trunk only 0 to 55 degrees and could go no further. *Id.* Chandler reported pain at 25 degrees and mild to moderate pain, weakness, fatigability, but no incoordination. *Id.*

Witkowski observed that Chandler ambulated "quite briskly" from the waiting area to the examination room. T135. Chandler reported he suffered no weight loss, fever, malaise, dizziness, or weakness; he performed daily chores at home; and he drove himself to his appointment that day. *Id.*

On February 18, 2003, Chandler visited the primary care clinic complaining of shortness of breath and a sensation his heart raced. T127. Chandler reported he used to smoke one and a half packages of cigarettes each day. *Id.* Erica K. Cichowski, M.D., noted Chandler exhibited no wheezing, rales, or rhonchi, and Chandler denied any tightness or heaviness in his chest. *Id.* Cichowski observed tenderness to palpation on the anterior aspect of Chandler's left shoulder, limited range of motion in both shoulders, left more than right, but "decent strength in all muscle groups in the upper extremities." Cichowski noted Chandler had good range of motion and good muscle strength in both lower extremities, and his knees exhibited no effusion. *Id.* Regarding Chandler's

5

degenerative disc disease, Cichowski reported that Chandler should continue taking Naproxen as it "seem[ed] to control his symptoms well." T128.

Cichowski assessed Chandler with a history of microscopic hematuria status post cystoscopy. *Id.* Cichowski noted Chandler evidenced bilobar prostatic hypertrophy with multiple superficial vessels and friable posterior urethral mucosa likely contributing to the microscopic hematuria. *Id.* Cichowski stated Chandler had difficulty keeping appointments. Cichowski recommended an exercise treadmill stress test, daily aspirin, a higher dose of beta blocker following the stress test, and a referral back to Urology. *Id.*

On April 10, 2003, Chandler presented at the walk-in clinic complaining of increased polyarthralgia, pain interfering with his sleep, but no active synovitis or red hot swollen joints. T113. Joe D. Scott, P.A., discontinued Naproxen and prescribed Motrin and Baclofen. T114. On April 18, 2003, Chandler reported that his arthralgias improved on Motrin. T108. On April 30, 2003, James Wigton, M.D., a VA doctor, examined Chandler and Chandler described pain in his right shoulder worse than his left shoulder. T109. Chandler maintained he suffered shoulder dislocation as a parachutist, and he now suffered constant pain, worse with movement, and had limited range of motion. T109. Chandler noted he could pick up a gallon of milk, but often he could not put on coats or a shirt because of range-of-motion pain. *Id.* Chandler further noted physical therapy did not help and he suffered from right knee pain worse than his left knee. *Id.* Chandler stated he suffered from daily pain in both knees, stiffness in the morning, difficulty with stairs, and at most could only walk to the market. T109-10. Chandler reported that his girlfriend did the shopping, cooking, and cleaning. T110.

Wigton further noted Chandler had a mild bony deformity in both knees. *Id.* Wigton observed crepitus in both knees and pain with active and passive extension and flexion.

6

*Id.* Chandler exhibited range of motion on the right 0 to 90 degrees before stopping because of pain, and 0 to 98 degrees on the left. *Id.* Chandler reported tenderness in both knees and tenderness in the lumbar spine and the lumbar paraspinous muscles with some paraspinous muscle spasm. *Id.* Straight leg raising caused lower back pain; shoulder testing revealed range of motion to 125 degrees on the right and 100 degrees on the left; abduction 80 degrees on the right and 10 on the left, and Chandler could "just barely" reach his hands behind his head. *Id.* Wigton assessed degenerative joint disease in the right shoulder; probable degenerative joint disease in the left shoulder; lumbar degenerative disc disease and spinal stenosis; bilateral knee pain, likely due to degenerative joint disease; chronic obstructive pulmonary disease; hypertension; and hyperlipidemia. *Id.*

In progress notes dated May 1, 2003, Wigton noted that hyperlipidemia and hypertension would not affect employment, and Chandler's chronic obstructive pulmonary disease ("COPD") would only preclude vigorous activity. T108. Wigton reported that Chandler's knee pain would not interfere with "extremely sedentary" activity and the shoulder problems would not preclude "extremely sedentary" activity not requiring significant movement of the upper extremities. *Id.* Wigton observed Chandler's difficulty getting up and down on the exam table and suspected that any sedentary activity required frequent change of position and must account for periodic episodes of bedrest. *Id.*

In July 2003, a state agency physician ("Physician") reviewed Chandler's record and determined Chandler is capable of working. T159. The Physician determined Chandler could lift/carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk six hours with breaks during an eight-hour workday, and sit continuously with breaks for six hours in an eight-hour workday. T152. The Physician noted Chandler's April 30, 2003 medical

7

record wherein Dr. Wigton stated that Chandler's impairments precluded any vigorous employment, but would not interfere with "extremely sedentary" activity. T159; T108. The Physician determined the record did not support these assertions, and the impairments were termed "mild" on x-ray. *Id*. The Physician further noted that Chandler walked briskly into the examining room.

Chandler presented for a routine examination on November 7, 2003, and complained of knee and shoulder pain. T231. Terrence Slattery assessed Chandler with polyarthritis and added Tramadol to help control Chandler's pain. *Id*. Chandler's urinalysis showed blood in his urine and Slattery ordered a renal ultrasound. On January 13, 2004, Chandler complained of low back pain with radiation down his left leg, but no weakness. T224. Jennifer L. Busskohl, PA-C, noted Chandler walked with an antalgic gait and Chandler experienced difficulty getting onto the exam table and rising from a seated position. T225. Chandler exhibited gross tenderness whenever Busskohl touched his back or spinous processes. Busskohl had difficulty obtaining an "accurate picture," namely, whether Chandler suffered from underlying renal issues. *Id*. Ultrasounds on January 13, 2004, and January 29, 2004, revealed renal stones and a stable right renal cyst. T220.

On May 11, 2004, Chandler presented complaining of lower back pain, stating he had "relatively few problems." T210. Chandler sought a refill for Tramadol, and denied any chest pain, shortness of breath, cough or wheezing, hemoptysis, melena, and hematocherzia. *Id*. Kelly J. Coon and Akhilesh Sharma, M.D., assessed Chandler with well controlled blood pressure; degenerative joint disease with lower back pain; and noted Chandler had an upcoming appointment with Urology concerning a history of microscopic hematuria with kidney stones. *Id*. Chandler underwent shock wave lithotripsy on June 4,

2004, and doctors installed a right ureteral stent at that time.  T196.  On June 24, 2004, doctors removed the stent.  *Id.*

Following the ALJ's decision, Chandler submitted evidence to the Appeals Council for consideration.  T243.  Chandler included a VA disability rating record in his materials.  T264.  The Department of Veteran Affairs ("VA") assessed Chandler with a 60% disability of the lumbosacral spine and 10% disability for mild to moderate right shoulder degenerative joint disease.  T264-65.  The VA based its determination on Chandler's lumbosacral strain; the MRI scan of degenerative disc disease, L1-2, L5-S1 and radiculopathy of the left lower extremity; and x-rays of Chandler's shoulders.  T264.

Chandler appeared before ALJ Norman R. Buls at a hearing on September 14, 2004. T306-322.  Chandler testified he was born in 1941; had a high school education and two years of college; and last worked assembling barricade signs, but the job ended prior to November 2001 when his employer did not get the next contract.  T307-08.  Chandler stated he previously worked as a customer service agent at a telephone center.  T310.  Chandler maintained he could not return to that job because the twisting of his neck caused pain to the base of his neck, and he had pain in his fingers, wrists, elbows, and shoulders.  T313.  Chandler reported that he took medication, but it made him sleepy.  *Id.* Chandler claimed he suffered from high blood pressure, hypertension, joint pain, and light sensitivity.  T314, 318-19, 320.

Chandler stated his day consisted of reading the newspaper, napping, eating, reading books, and sitting outside.  T314-15.  Chandler said he occasionally grocery shopped, but his girlfriend did his laundry, cleaned his house, and the two would go out to eat occasionally, and sometimes went to movies.  T316.  Chandler also watched movies

at home, some television, and visited family and attended church. T316. Chandler owns a vehicle and drove himself to the hearing that day. T308.

**Legal Standard**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering . . . his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

An ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

10

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

**Discussion**

The ALJ determined Chandler suffered from degenerative disc disease of the lumbar spine and a history of renal stones. T24. The ALJ noted that Chandler did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ maintained that Chandler's underlying impairment could possibly cause pain or other symptoms, but Chandler's

11

allegations regarding pain or other symptoms were not fully credible, and Chandler did not suffer from a "disability" within the meaning of the Act. T24. The ALJ concluded that Chandler retained functional capacity to perform sedentary work and could lift/carry ten pounds occasionally, up to ten pounds frequently, stand and/or walk at least two hours with breaks during an eight-hour workday, and sit continuously with breaks every two hours for about six hours in an eight-hour workday. *Id*. Additionally, the ALJ noted that Chandler's impairments did not prohibit him from his past work as a customer service representative. The ALJ determined Chandler is not entitled to disability or disability insurance benefits under sections 216(i) and 223, respectively, of the Act.

Chandler argues the ALJ erred in determining Chandler's testimony lacked credibility. Chandler contends that the ALJ failed to attribute proper weight to the VA's disability and unemployability finding. Chandler further contends that the ALJ failed to properly evaluate Chandler's COPD diagnosis in assessing its impact alone or in combination with his other impairments.

### A. Credibility and the VA's Findings

The ALJ questioned Chandler's credibility because of inconsistencies in the record. Chandler testified that he had trouble moving his fingers due to arthritis, but the ALJ found no mention of finger problems in the record. T22. The record does contain Chandler's complaints of finger numbness and pain, however, even with this evidence, Chandler acknowledged medication alleviated his pain. T143,313,147. If a plaintiff's symptoms are controlled or treatable with medication, the plaintiff cannot be considered disabled. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). The record evidences Chandler's assertion that his medications helped "quite a bit." T127;145;147.

Furthermore, the ALJ noted that Chandler reported constant pain, but in May 2004, he complained of low back pain since January 2004.  On January 17, 2003, Chandler presented for an increase examination and requested an examination of his right shoulder. T137.  In his record, Issac Witkowski noted that Chandler's file only contained complaints concerning Chandler's left shoulder.  *Id.*  Chandler takes issue with the ALJ's determination that Chandler's condition is often couched in terms of "minimal" and "mild."  Chandler argues these terms are used by radiologists in reference to the x-ray and MRI reports and not as objective evidence.  The record does not support his assertion: Chandler's pain and degenerative disc disease is described as "mild."  *See* TR 135;138.  Assuming that "mild" is only a radiologist's term and not used in reference to pain or disease progression, the record still consists of notes that "I really do not see any atrophy of the shoulder muscle group when compared to the right shoulder" (T146), "[n]o reproduction of symptoms or increased report of pain with resistance of any left shoulder motion" (T140), "no weakness, fatigability, or incoordination" (T138), and "decent strength in all muscle groups in the upper extremities" (T127).

The ALJ reported that the record is replete with references of Chandler's noncompliance with his doctors' recommendations.  T22.  Chandler argues that this is, "to say the least, a mystery to Chandler."  The record evidences that Chandler seemed vague and noncommittal (T145), would not identify goals or answer questions (T139), and did not keep appointments (T123;128).  "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."  *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (citing *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989)).  The ALJ determined Chandler's noncompliance did not support

13

Chandler's allegations of pain. This court agrees that Chandler's noncompliance does not support Chandler's assertions of credibility.

Chandler contends that the ALJ evaluated the state agency Physician's testimony, although the Physician never met Chandler and failed to appropriately weigh the VA's assessment. The ALJ determined the VA disability rating was too restrictive under the Social Security disability rules, given Chandler's demonstrated abilities, the "mild" objective findings, and Chandler's lack of credibility. T24. "The ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). The ALJ cited *McCartney v. Massanari*, 298 F.3d 1072 (9th Cir. 2002), for the proposition that an ALJ may appropriate less weight to a VA disability rating if the ALJ provides persuasive, specific, valid reasons supported by the record. Here, this court cannot disagree with the ALJ's determination. The record indicates that Chandler's reports of pain are inconsistent, thereby eroding Chandler's credibility. Further, this court finds that the evidence in the record supports the state Physician's determination that Chandler could lift/carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk six hours with breaks during an eight-hour workday, and sit continuously with breaks every two hours for six hours in an eight-hour workday. T152. Given this court's assessment of the record as a whole, the ALJ accorded appropriate weight to the VA's findings.

**B.     Chandler's COPD Diagnosis and Paranoid Personality Disorder**

The issue here is whether the evidence in the record about Chandler's impairments supports a finding that Chandler's level of limitations is disabling. The ALJ stated that subjective symptoms alone do not establish disability and noted that Chandler reported that he is still able to perform a long list of activities. Chandler is able to operate a vehicle, go

to the grocery store, read, attend movies, watch TV, go out to eat, sit outside, attend church, and visit family. T308; 314-16. The ALJ found that this evidence indicates that the plaintiff retains the physical and mental functional capacity to perform the sedentary level of work activity. Chandler argues that "the record establishes that Chandler suffers from both COPD and paranoid personality disorder." T146. However, the record only makes note of Chandler's claim of psychiatric diagnoses; nothing in the record indicates that Chandler exhibited any limitations or symptoms related to his alleged mental disorder. Dr. Wigton states that Chandler's COPD would only preclude him from vigorous activity. T108.

Therefore, the court finds that the record does not support any findings concerning Chandler's alleged COPD or paranoid personality disorder. Both the hearing transcript and the ALJ's opinion are devoid of any information pertaining to the alleged diagnoses. The court is unable to determine whether Chandler's alleged COPD or paranoid personality disorder impact Chandler's physical impairments sufficient for a finding of disability.

ACCORDINGLY, IT IS ORDERED that this case is remanded to the ALJ for further findings concerning Chandler's purported COPD and paranoid personality disorder as it relates to his other impairments. A separate judgment will be entered in accordance with this memorandum and order.

DATED this 22nd day of September, 2006.

BY THE COURT:

s/Joseph F. Bataillon
Chief U.S. District Court Judge